IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEONARD W. NASH, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 23-596-GBW-SRF |
| ) | |
| QUALTRICS INTERNATIONAL INC., ) | |
| a Delaware corporation formerly known as ) | |
| CLARABRIDGE, INC., BAS BRUKX, an ) | |
| individual, KARL KNOLL, an individual, ) | |
| and MARK BISHOF, an individual, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Presently before the court in this securities action for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") is a motion to dismiss for failure to state a claim under Rule 12(b)(6), filed by defendants Qualtrics International Inc. ("Qualtrics"), f/k/a Clarabridge, Inc. ("Clarabridge"), Bas Brukx, Karl Knoll, and Mark Bishof (collectively, "Defendants").[1] (D.I. 9) For the following reasons, I recommend that the court GRANT-IN-PART the motion to dismiss.

### I. BACKGROUND

Plaintiff Leonard W. Nash ("Plaintiff") is a former senior executive of Clarabridge and was a key holder of 357,392 shares of preferred Clarabridge stock. (D.I. 1 at ¶¶ 1, 16) After analyzing his securities portfolio in connection with his retirement planning, Plaintiff contacted Clarabridge's Chief Financial Officer ("CFO"), Bas Brukx, on November 10, 2020 to request a telephone call regarding Clarabridge's financial performance and prospects. (Id. at ¶¶ 20-22) During the ensuing call on November 13, Brux indicated that Clarabridge's value was in the

---

[1] The briefing associated with the pending motion can be found at D.I. 10, D.I. 18, and D.I. 21.

range of $300 million to $350 million. (*Id.* at ¶ 24) When Plaintiff asked if there was a pending sales process with potential acquirers or if Clarabridge had retained bankers to sell the company, Brux did not disclose that Clarabridge had begun sales discussions with Qualtrics. (*Id.* at ¶¶ 24-26)

After the call, Brukx conferred with Clarabridge's CEO, Mark Bishof, and referred Plaintiff to Sanju Bansal, a member of Clarabridge's Board of Directors, as someone who might be interested in acquiring Plaintiff's preferred stock. (*Id.* at ¶¶ 27-29) On November 16, 2020, Plaintiff offered to sell his stock to Bansal for $7.50 per share, and Bansal countered with an offer of $6.30 per share three days later. (*Id.* at ¶¶ 30-34) At no time during this exchange did Bansal disclose that Clarabridge was involved in sales discussions with Qualtrics. (*Id.*)

On December 15, 2020, Plaintiff gave notice to other key holders of Clarabridge stock that he intended to sell his shares to Bansal for $6.30 per share. (*Id.* at ¶ 38) Two days later, Clarabridge's general counsel, Karl Knoll, called Plaintiff's attorney, Michael Schwamm, to give unofficial notice that Clarabridge would exercise its right of first refusal ("ROFR") to purchase Plaintiff's preferred stock on the same terms offered by Bansal. (*Id.* at ¶ 39) Schwamm asked Knoll if Clarabridge had been engaged in sales discussions in the last six months, and Knoll represented that it had not. (*Id.* at ¶ 40) Brukx formally notified Plaintiff of Clarabridge's intent to exercise its ROFR to purchase Plaintiff's stock on December 24, 2020, and Brukx and Knoll confirmed to Schwamm that Clarabridge was not involved in a sale process and was not holding a letter of agreement ("LOA"). (*Id.* at ¶¶ 41-44)

Knoll circulated a draft Stock Repurchase Agreement (the "Agreement") which contained a "big boy" provision stating that "[t]he Holder hereby acknowledges that Holder has not relied on any representation or statement of the Company in making Holder's investment decision to

2

sell the Shares and acknowledges that the Company has no duty or obligation to provide such Holder any such information," waiving and releasing any claims against Clarabridge "with respect to the nondisclosure of the Non-Public Information in connection with the sale of the Shares and the transactions contemplated by this Agreement." (*Id.* at ¶ 45) On December 28, Schwamm proposed a revision to the Agreement stating that "[t]he Company is not actively engaged in negotiations with respect to the sale of all or a significant amount of the securities or assets of the Company . . . nor has it received within the prior six months or reasonably expects to receive within the next six months an indication of interest, letter of intent, or similar document with respect to a Sale of the Company." (*Id.* at ¶¶ 46-47) Knoll rejected the inclusion of Schwamm's proposed language in the Agreement, writing "Michael, thanks, but to be clear, I told you I could tell you that, but we wouldn't' provide a company rep to that effect in the document. We wouldn't include something that undermines in any way the big boy reps that our board is requiring[.]" (*Id.* at ¶ 48)

On January 4, 2021, Plaintiff sold his preferred stock to Clarabridge at a price of $6.30 per share. (*Id.* at ¶ 51) On July 29, 2021, Qualtrics announced that it had entered into an agreement to purchase Clarabridge for $1.125 billion, or about $22 per share. (*Id.* at ¶ 52) Two weeks later, Clarabridge's CEO, Mark Bishof, held a shareholder meeting in which he disclosed that he "had been talking probably for over a year now in earnest" about the sale of Clarabridge to Qualtrics. (*Id.* at ¶¶ 53-54)

Plaintiff brought this suit against Defendants on May 31, 2023, seeking recovery of damages incurred as a result of Defendants' alleged misrepresentations about the value of Plaintiff's preferred stock. (D.I. 1) Defendants moved to dismiss the complaint on July 27, 2023. (D.I. 9) The motion is fully briefed and ripe for resolution.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(6)

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

### B. Rule 9(b) and the Private Securities Litigation Reform Act

Claims for securities fraud are subject to the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009). Under Rule 9(b), a plaintiff alleging securities fraud must "state with particularity the circumstances constituting fraud or mistake," including "the 'who, what, when, where and how' of the events at issue." Fed. R. Civ. P. 9(b); *In re Rockefeller Center Prop. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory*, 114 F.3d at 1422). The heightened pleading standard of the PSLRA requires a plaintiff to (1) "specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading;" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal citations and quotations omitted).

## III. DISCUSSION

### A. Securities Fraud Under Section 10(b) and Rule 10b-5

Count I of the complaint is brought under Section 10(b) of the Exchange Act, which makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]" 15 U.S.C. § 78j(b). Rule 10b-5 implements Section 10(b) and makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. Plaintiff alleges that the complaint asserts liability under each of the three subsections of Rule 10b-5. (D.I. 18 at 9-19)

### 1. Material misstatement or omission under Rule 10b-5(b)

To state a claim for violation of Section 10(b) of the Exchange Act and Rule 10b-5(b), a plaintiff must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Here, Defendants challenge whether the complaint adequately pleads the first two elements—a material misrepresentation or omission and scienter—under the heightened pleading requirements imposed by the PSLRA and Rule 9(b). *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006).

The complaint identifies three alleged misstatements made on November 13, December 17, and December 24, 2020, when Brukx and Knoll told Plaintiff that Clarabridge was not engaged in an active sales process. (D.I. 1 at ¶¶ 36-44) In support of their motion to dismiss, Defendants argue that these statements are not misrepresentations of fact because there was no common understanding among the parties regarding the meaning of "active sales process." (D.I. 10 at 12) Because Clarabridge did not have a LOA with Qualtrics and had not hired bankers at the time the alleged misrepresentations were made, Defendants contend that Plaintiff's

characterization of Brukx and Knoll's statements as false is based on Plaintiff's own opinion of the meaning of "active sales process." (*Id.* at 12-13)

Plaintiff responds that Brukx and Knoll's denial of the existence of an active sales process was a statement of fact, as opposed to an opinion. (D.I. 18 at 11) According to Plaintiff, the well-pleaded allegations in the complaint establish that Defendants understood Plaintiff was asking whether Clarabridge was likely to be sold soon. (*Id.* at 12) Even if the challenged statements could be characterized as opinions, Plaintiff maintains that those opinions would still be actionable because they were not sincerely held. (*Id.* at 11 n.1)

The complaint adequately alleges misstatements of fact made by Brukx and Knoll on November 13, December 17, and December 24, 2020, when they represented to Plaintiff and Schwamm that there was no active sales process for the sale of Clarabridge at that time. (D.I. 1 at ¶¶ 24-26, 40, 43-44) The Supreme Court has explained that "[a] fact is 'a thing done or existing' or '[a]n actual happening[,]' whereas an opinion is 'a belief[,] a view,' or a 'sentiment which the mind forms of persons or things." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015). Here, the complaint alleges that Brukx and Knoll represented Clarabridge was not actually engaged in sales discussions on the dates Plaintiff and Schwamm raised the inquiry, and there is nothing to suggest that these representations were an expression of Brukx or Knoll's beliefs or views. (D.I. 1 at ¶¶ 24-26, 40, 43-44) The questions asked elicited responses about the past and/or present status of sales discussions, as opposed to a forecast of potential future events. (*Id.*)

The complaint plausibly establishes the falsity of these statements based on Bishof's representation in August of 2021 that he and others at Clarabridge "had been talking probably for over a year now in earnest" about the sale of the company to Qualtrics. (*Id.* at ¶¶ 53-54) This

7

statement encompasses the critical period in November and December of 2020 when Plaintiff and Schwamm asked whether Clarabridge was in sales discussions. Knoll's refusal to confirm in writing that Clarabridge was not engaged in an active sales process further supports Plaintiff's position that Brukx and Knoll's verbal representations were false. (*Id.* at ¶¶ 46-48) Viewed in the light most favorable to Plaintiff, these averments satisfy the PSLRA's requirement that a plaintiff must "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007) (citing 15 U.S.C. s 78u—4(b)(1)(B)).

  Defendants argue that Brukx and Knoll's responses were not false based on their "understanding" of the phrase "active sales process" to require the execution of an LOA and/or the retention of bankers. (D.I. 10 at 12-13) But the pleaded allegations, when viewed in the light most favorable to Plaintiff, do not support Defendants' position. For example, the complaint alleges that "[d]uring the December 17, 2020 call, Schwamm asked if Clarabridge was engaged in sale discussions in the last six months. Knoll confirmed that Clarabridge was not actively involved in discussions to sell the company." (*Id.* at ¶ 40) There is no indication that Schwamm asked about an LOA or the retention of bankers during the December 17 call, and the six-month scope of his inquiry suggests he was asking about more than just late-stage sales negotiations. And when asked if Clarabridge was "running a sale process" or "holding an LOA," Knoll addressed both questions in the negative, stating that Clarabridge was "not in an active process, nor are we holding an LOA." (*Id.* at ¶ 44) Knoll's separate response to each question indicates that he understood holding an LOA was not necessarily synonymous with, or a prerequisite for, the existence of an active sales process, consistent with Plaintiff's purported understanding.

8

Even if the court were to characterize the alleged misrepresentations as opinions, the allegations nonetheless support Plaintiff's cause of action at Count I of the complaint. "[F]or claims under § 10(b) and Rule 10b-5, an opinion statement is misleading if it: (i) was not sincerely believed when made; (ii) contains an expressly embedded, untrue factual assertion; or (iii) reasonably implies untrue facts and omits appropriate qualifying language." *City of Warren Police & Fire Ret'mt Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 686 (3d Cir. 2023). Here, it is reasonable to infer from the pleaded allegations that Brukx and Knoll did not sincerely believe there was no active sales process on November 13, December 17, or December 24. The complaint alleges that Brukx and Knoll were actively involved in the sales process with Qualtrics in their capacities as CFO and general counsel, respectively, yet they denied the existence of that sales process. (D.I. 1 at ¶¶ 61-62) Their statements also lacked qualifying language distinguishing early and late-stage sales discussions, leaving Plaintiff with the allegedly false impression that Clarabridge had no sales prospects. *See City of Warren*, 70 F.4th at 686. Knoll's refusal to disavow the existence of a sales process in writing further suggests that Knoll understood the statements were misleading. (D.I. 1 at ¶¶ 46-48)

Defendants also contend that the alleged misrepresentations are not material because statements about the status of the sales process are speculative in the absence of a commitment to consummate the transaction. (D.I. 10 at 13-14) In support of this argument, Defendants cite cases from several jurisdictions recognizing that merger discussions are generally not considered material until there is a serious commitment to consummate the transaction.[2] (*Id.* at 14) But a

---

[2] *See In re Gen. Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119, 1127 (D. Del. 1988); *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1167-68 (10th Cir. 2018); *Taylor v. First Union Corp. of S.C.*, 857 F.2d 240, 244 (4th Cir. 1988); *Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411, 415 (1st Cir. 1989); *Vladimir Bioenvision Inc.*, 606 F. Supp. 2d 473, 489

deeper reading of these cases confirms that there is no bright-line rule establishing the immateriality of preliminary merger and acquisition discussions. Instead, courts engage in a fact-specific inquiry balancing the probability that a merger will succeed against the magnitude of the transaction. *See Employees' Ret. Sys. of Rhode Island v. Williams Cos., Inc.*, 889 F.3d 1153, 1168 (10th Cir. 2018) ("Any rule that designates a single fact or occurrence as always determinative of an inherently fact-specific finding such as materiality, must necessarily be overinclusive or underinclusive."). Defendants do not address the propriety of resolving this fact-specific inquiry at the pleadings stage based on the record before the court.

These cases also undercut Defendants' suggestion that they had no obligation to disclose preliminary sales negotiations in response to Plaintiff's direct inquiries. While "silence on the issue of merger discussions is not misleading[,]" a company that elects to speak about mergers or acquisitions "must speak truthfully and completely." *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 485 (S.D.N.Y. 2009), *aff'd sub nom. Thesling v. Bioenvision, Inc.*, 374 F. App'x 141 (2d Cir. 2010) (citing *In re Time Warner Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993)). Here, the complaint alleges that Defendants responded untruthfully to Plaintiff's inquiries about the status of sales discussions and omitted information about discussions with Qualtrics in their responses. Defendants' focus on the early stage of the sales discussions ignores the materiality of their representations that there was no "active sales process" even though sales discussions had begun. (D.I. 10 at 13-14) The complaint plausibly alleges that, in reliance on those representations, Plaintiff was induced to sell his shares for $6.30 per share and, months later, Clarabridge's stock was sold to Qualtrics for $22 per share. (D.I. 1 at ¶¶ 57-60)

---

(S.D.N.Y. 2009); *In re CCIV/Lucid Motors Sec. Litig.*, 2023 WL 325251, at *10 (N.D. Cal. Jan. 11, 2023).

### 2. Scienter

Defendants also challenge the sufficiency of Plaintiff's allegations of scienter. (D.I. 10 at 17-18) Under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind," i.e., that defendants acted with "scienter." 15 U.S.C. § 78u-4(b)(2)(A); *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 (3d Cir. 2013). "A 'strong inference' of scienter is one that is 'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Avaya*, 564 F.3d at 267 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)). "The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 310 (emphasis in original). A plaintiff can meet the "strong inference" requirement by "alleging facts to show that [the defendant] had both motive and opportunity to commit fraud" or by "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Burlington Coat Factory*, 114 F.3d at 1418.

The complaint alleges particularized facts showing that Defendants had a motive and an opportunity to commit fraud. Allegations regarding the desire of the corporation and its officers to complete a transaction and reap financial benefits from that transaction are not enough to give rise to a strong inference of fraudulent intent because such motives "are generally possessed by most corporate directors and officers[.]" *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004). Here, however, the complaint alleges facts showing that Defendants stood to gain a benefit beyond the ordinary profit incentive of completing the sale because "induc[ing] Nash to sell his Preferred Stock to the Company at an artificially reduced price . . . would result in the cancellation of Nash's shares and would proportionally increase the amounts that Bishof,

11

Knoll, and Brukx would receive for their shares and options at the closing of the transaction with Qualtrics." (D.I. 1 at ¶ 67) In this manner, the complaint plausibly alleges that Bishof, Knoll and Brukx seized the opportunity to increase their personal financial gain by inducing Plaintiff to sell his shares at the reduced price of $6.30 and subsequently consummating the sale to Qualtrics at a price of $22 per share. (D.I. 1 at ¶¶ 51-52, 60); *see Tellabs*, 551 U.S. at 325 ("[P]ersonal financial gain may weigh heavily in favor of a scienter inference[.]"). This financial incentive goes beyond the mere avoidance of future risk and exceeds the value expected by ordinary shareholders at the consummation of the sale, rendering the instant circumstances distinguishable from those before the Third Circuit in *In re Digital Island Securities Litigation*, 357 F.3d 322, 329-30 (3d Cir. 2004).

      The factual allegations in the complaint, viewed collectively, also support a strong inference that Defendants behaved recklessly. The complaint alleges that Brukx and Knoll repeatedly represented there were no discussions for the sale of Clarabridge, knowing those representations were false, in response to direct questioning from Plaintiff and Schwamm. (D.I. 1 at ¶¶ 36-44, 61-63); *see Avaya*, 564 F.3d at 270 (finding plausible allegations of scienter where "a defendant chief financial officer is specifically asked, directly and repeatedly, whether the company's pricing has held steady despite the competitiveness of the market."). The complaint further alleges that Brukx and Knoll directly reported to Bishof about Plaintiff's inquiries and received direction from Bishof on how to respond. (D.I. 1 at ¶¶ 28, 63, 65-66) Bishof's subsequent disclosure of the length of the sales negotiations during the August 2021 meeting implies he was aware that the earlier representations made to Plaintiff were false. (*Id.* at ¶¶ 53-55) And Knoll's email exchange with Schwamm highlights his willingness to make oral representations that he refused to put in writing, indicating his conscious disregard for the truth

of those oral representations. (*Id.* at ¶¶ 46-48) Unlike the situation in *In re Digital*, the facts pleaded here go beyond general corporate mismanagement and give rise to an inference that Brukx, Knoll, and Bishof deliberately encouraged Plaintiff to sell his shares at a reduced price to increase their own financial gain at the time of the ultimate sale. 357 F.3d at 332.

Defendants argue that the complaint "fails to allege with specificity whether any of the Individual Defendants *actually knew* that any statement about 'bankers' or a 'letter of intent' were untrue in November and December 2020." (D.I. 10 at 18) But Plaintiff does not contend that Defendants' statements about "bankers" or a "letter of intent" were untrue. Rather, the focus of Plaintiff's complaint is on Defendants' alleged misstatements about the status of sales discussions. (D.I. 1 at ¶¶ 36-44)

For the reasons previously discussed, the complaint plausibly alleges that Brukx, Knoll, and Bishof knew their own representations about the status of sales discussions were false because Bishof said he was engaged in those sales discussions, and he fielded reports from Brukx and Knoll regarding Plaintiff's inquiries. (*Id.* at ¶¶ 54-55, 61-63) Defendants maintain that the corporate roles of these individuals are too generalized to sustain allegations of scienter, but this argument does not account for the specificity and repetition of Plaintiff's inquiries and the "confident, unhedged denials" by Knoll and Brukx after they conferred with Bishof. *Avaya*, 564 F.3d at 270 (stating that a chief financial officer's unqualified denials in response to specific, repeated questions were likely to mislead investors, even if the officer was not aware of the full extent of the circumstances alleged by the shareholders). In the face of specific, direct questions, Defendants' repeated denial of ongoing sales negotiations give rise to a strong inference of recklessness. *Id.* ("Given the specificity and repetition of the analysts' questions, McGuire's position as Chief Financial Officer, and the alleged state of Avaya's business at the time the

questions were asked, there is a strong inference that McGuire's behavior reached this threshold of recklessness.").

In sum, the complaint avers that Defendants explicitly denied a fact in response to repeated questioning about it, which the Third Circuit has described as "powerful evidence of scienter." *See Avaya*, 564 F.3d at 269. Having determined that the complaint plausibly alleges facts that constitute strong evidence of motive and opportunity, as well as conscious misbehavior or recklessness, I recommend that the court deny Defendants' motion to dismiss Count I of the complaint for violations of Section 10(b) of the Exchange Act and Rule 10b-5(b).

### 3. Scheme liability under Rule 10b-5(a) & (c)

For the first time in the answering brief, Plaintiff argues that the complaint also states a claim for "scheme liability" under Rule 10b-5(a) and (c). (D.I. 18 at 9-10) "To state a claim based on conduct violating Rule 10b-5(a) and (c), a private plaintiff must allege (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 350 (D.N.J. 2009). Critically, scheme liability must be premised "on misconduct separate from misrepresentations and omissions violating Rule 10b-5(b)." *OpenGate Capital Grp. LLC v. Thermo Fisher Sci., Inc.*, 2014 WL 3367675, at *7 (D. Del. July 8, 2014). Although the heading of Count I identifies a cause of action for violation of Section 10(b) and Rule 10b-5 generally, the specific theory of scheme liability under Rule 10b-5(a) and (c) is not pleaded in the complaint, separate and apart from the allegations under Rule 10b-5(b). *See De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *42 (D.N.J. Dec. 31, 2018) (explaining that conduct under Rule 10b-5(a) and (c) must be "fraudulent in its own right, apart from any misrepresentations about the conduct" under Rule 10b-5(b)).

14

During oral argument, the court recommended granting the motion to dismiss any cause of action for scheme liability under Rule 10b-5(a) and (c) after Plaintiff was unable to satisfy the court's inquiry as to where in the complaint the cause of action was alleged. (1/18/2024 Tr.) Plaintiff then requested leave to amend the complaint. (*Id.*) Defendants acknowledged that leave to amend is freely granted under Rule 15(a) where, as here, there has been no prior amendment. (*Id.*); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). Consequently, I recommend that the court grant the motion to dismiss Plaintiff's cause of action for scheme liability under Rule 10b-5(a) and (c) and give Plaintiff leave to amend the complaint within ten days of the expiration of the objections period or the resolution of objections by the District Judge.

### B. Control Person Liability Under Section 20(a)

Count II of the complaint asserts a cause of action for control person liability under Section 20(a) of the Exchange Act. An individual who controls a violator of Section 10(b) of the Exchange Act may be liable under Section 20(a). *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006); *see also* 15 U.S.C. § 78t(a). To state a claim under Section 20(a), the plaintiff must plead that one person controlled another person, the "controlled person" is liable under the Exchange Act, and the defendant was a "culpable participant" in the violation of the Exchange Act. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484-85 (3d Cir. 2013).

Defendants contend that Plaintiff's Section 20(a) claim for control person liability against Brukx, Knoll, and Bishof should be dismissed because "Plaintiff has failed to allege a viable Securities Fraud Claim against any of the Individual Defendants or entities under Rule 9(b), 12(b)(6) and the PSLRA." (D.I. 10 at 19) For the reasons previously stated at § III.A, *supra*, the complaint adequately alleges an underlying cause of action against Defendants pursuant to

15

Section 10(b) and Rule 10b-5. Consequently, I recommend that the court deny Defendants' motion to dismiss Plaintiff's cause of action under Section 20(a).

## IV. CONCLUSION

For the reasons discussed above, I recommend that the court GRANT-IN-PART Defendants' motion to dismiss. (D.I. 9) Specifically, I recommend that the court GRANT Defendants' motion to dismiss the complaint to the extent that it alleges a cause of action for scheme liability under Rule 10b-5(a) and (c). Plaintiffs may seek leave to amend the pleading to add a cause of action under Rule 10b-5(a) and (c) within ten (10) days from the expiration of the objections period or the resolution of objections by the District Judge. I recommend that the court DENY the motion to dismiss in all other respects.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 22, 2024

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

16